UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| BRENDA J. BISHOP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-1620-GMB |
| | ) | |
| FRANK BISIGNANO, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On September 13, 2022, Plaintiff Brenda J. Bishop filed an application for supplemental security income ("SSI") with an alleged disability onset date of April 27, 2012. She later amended her alleged onset date to September 13, 2022, the SSI application filing date. Bishop's application was denied at the initial administrative level and upon reconsideration. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a telephone hearing on November 13, 2024, and denied Bishop's claims on December 5, 2024. Bishop requested a review of the decision by the Appeals Council, which declined review on July 17, 2025. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner") as of July 17, 2025.

Bishop's case is now before the court for review pursuant to 42 U.S.C.

§ 1383(c)(3).  Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil

Procedure, the parties have consented to the full jurisdiction of a United States

Magistrate Judge. Doc. 9.  Based on a review of the parties' submissions, the relevant

law, and the record as a whole, the decision of the Commissioner is due to be

reversed and remanded.

## I.  STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the

Commissioner's decision "is supported by substantial evidence and based upon

proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

The court will reverse the Commissioner's decision if it is convinced that the

decision was not supported by substantial evidence or that the proper legal standards

were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The

court "may not decide the facts anew, reweigh the evidence, or substitute [its]

judgment for that of the Commissioner," but rather "must defer to the

Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*,

84 F.3d 1397, 1400 (11th Cir. 1996) (citation and internal quotation marks omitted).

"Even if the evidence preponderates against the [Commissioner's] factual findings,

---

[1] In general, the legal standards are the same whether a claimant seeks disability insurance benefits ("DIB") or SSI.  However, separate parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in excerpted court decisions.

[the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing is "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 374–75 (11th Cir. 2007) (citing *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the

3

Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Bishop bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm., Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.  A negative answer to any question, other than [at] step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)–(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

### III.  RELEVANT FACTUAL BACKGROUND

Bishop was 51 years old when she filed her application for SSI. R. 396.  Her primary physical complaints involve general pain in her neck and arms, along with pain when standing for long periods. R. 52, 59–60.  Bishop's primary mental complaints surround bipolar disorder, schizophrenia, anxiety, and an inability to concentrate and remember. R. 67–68, 70–71.  In her disability report, she alleged physical conditions related to her back and neck and mental conditions of bipolar disorder and schizophrenia. R. 421.  She completed the fourth grade and part of the fifth grade in school and has not worked in the past 15 years. R. 63–64, 422.

Bishop submitted several medical opinions in support of her application, including one from Dr. Oguntuyo and one from Dr. Nichols.  Dr. Oguntuyo

examined Bishop in July 2012 and formulated an opinion based on his examination. R. 579–83. He noted arthralgia, stiffness, and decreased range of motion of the spine and observed decreased peripheral sensation "of L4, L5, S1 and S2 bilaterally." R. 580. He also noted that Bishop "uses a walking cane occasionally for supports." R. 580. He observed 5/5 deep tendon reflexes in her knees, bilateral hand grip strength and muscle strength in her upper and lower extremities, and proprioception and vibration senses that were intact bilaterally. R. 580. She was able to heel walk, toe walk, and perform a squat and rise test with a normal range of motion in her knees, ankles, hips, shoulders, elbows, forearms, and wrists. R. 580.

Based on his physical observations, Dr. Oguntuyo offered the opinion that Bishop "may not be able to perform any work related activities that will involve prolonged standing, sitting, walking, lifting, carrying, handling objects because of the low back pain with the associated numbness and tingling with burning sensation which may be consistent with degenerative disc disease with radiculopathy and or myelopathy." R. 581. He continued that her "history of chronic neck pain with associated decreased range of motion, status post neck surgery with numbness and tingling and burning sensation over the interscapular region is incapacitating to the patient." R. 581.

Licensed psychologist Dr. June Nichols performed a mental status examination in July 2012. R. 585–87. Dr. Nichols began by noting Bishop's history

6

of Bipolar I Disorder and her current symptoms of impaired concentration, paranoid delusions, and auditory hallucinations. R. 585. Dr. Nichols observed that Bishop's stream of consciousness was clear, but she had pressured speech, manic mood, an inability to do serial threes or sevens, and her thought processes were accelerated, loose, and accompanied by tangentiality. R. 586. In addition, Bishop's "[t]hought content was positive for auditory hallucinations" and she had persecutory delusions. R. 586. Dr. Nichols assessed Bishop's judgment and insight as poor and estimated her to be functioning in the low-average range of intellectual ability. R. 586.

Dr. Nichols opined that Bishop's "ability to relate interpersonally and withstand the pressures of everyday work is severely compromised due to the nature of her manic symptoms." R. 587. Dr. Nichols concluded that Bishop's "mania would interfere with her ability to remember, understand and carry out work related instructions" and that she "lacks insight into her current condition." R. 587. She believed that Bishop "would require assistance with fund management" if awarded financial benefits. Finally, Dr. Nichols predicted that the "prognosis for her condition in the next 12 months is extremely poor." R. 587.

The ALJ issued his decision on December 5, 2024. R. 41. Under step one of the five-step evaluation, he found that Bishop had not engaged in substantial gainful activity since September 13, 2022, the application date. R. 30. At step two, the ALJ concluded that Bishop suffers from the severe impairments of lumbar spondylosis,

lumbar facet hypertrophy, cervical disc disease, obesity, bipolar disorder, and schizophrenia. R. 30.  The ALJ noted that the medically determinable impairments cause significant limitations in Bishop's ability to perform basic work activities. R. 30.  At step three, the ALJ found that Bishop does not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in the applicable regulations. R. 31–32.

Before proceeding to the fourth step, the ALJ determined that Bishop had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 416.967(b). R. 32.  More specifically, the ALJ found that Bishop has the following limitations with respect to light work:

> [C]laimant can occasionally push and pull with the bilateral upper and lower extremities, occasionally stoop, kneel, crouch and crawl, occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds.  The claimant can perform frequent bilateral reaching including overhead and frequent handling.  The claimant should avoid concentrated exposure to extreme cold, heat, wetness and humidity and avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust and gas.  She should avoid all exposure to hazardous conditions such as unprotected heights, dangerous machinery, and uneven surfaces.  The claimant would be restricted to jobs with no more than simple, short instructions and simple work-related decisions with few work-place changes and only occasional interaction with the general-public, supervisors and co-workers.  She would be unable to perform jobs with the requirement to read instructions and write reports and would be unable to perform jobs with the requirement to perform math calculations such as a teller or cashier.

R. 32–33.  At the fourth step, the ALJ determined that Bishop has no past relevant work. R. 39.  At the fifth step, the ALJ considered Bishop's age, marginal education,

work experience, and RFC in determining that there are jobs that exist in significant numbers in the national economy that Bishop can perform, including work as an electronics worker, small products assembler I, and inspector/hand packager. R. 39–40. Therefore, the ALJ concluded that Bishop was not under a disability as defined by the Social Security Act since September 13, 2022, the date of the application. R. 40. Based on these findings, the ALJ denied Bishop's application. R. 41.

## IV. DISCUSSION

Bishop makes two arguments in support of remand. First, she contends that the ALJ did not properly evaluate all of the available medical opinions as required by 20 C.F.R. § 416.920c. Doc. 10 at 20–32. Second, she argues that the Appeals Council erred when it failed to grant review. Doc. 10 at 32–35. The court agrees with portions of Bishop's first argument, requiring remand. Because of this finding, the court does not address Bishop's other arguments.

The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is an assessment of a claimant's ability to work despite impairments. 20 C.F.R. § 404.1545(a)(1). In framing an RFC, the ALJ examines all relevant medical and other evidence, including statements provided by medical sources and descriptions and observations of the limitations. 20 C.F.R. § 404.1545(a)(3).

In assessing Bishop's RFC, the ALJ evaluated the opinions of Dr. Oguntuyo

and Dr. Nichols.  There is no dispute that both doctors are acceptable medical sources who issued medical opinions. *See* 20 C.F.R. §§ 404.1502(d) (stating that a "medical source" is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law"); 20 C.F.R. § 404.1513(a)(2)(i) (stating that a medical opinion "is a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in certain enumerated abilities).

The ALJ here concluded that the medical opinions of Dr. Oguntuyo and Dr. Nichols were "neither inherently valuable nor persuasive." R. 38 & 39.  This language comes from 20 C.F.R. § 416.920b(c) and does not relate to the evaluation of medical opinions.  Instead, it applies to (1) decisions made by other governmental agencies and nongovernmental agencies, (2) disability examiner findings, and (3) statements on issues reserved to the Commissioner (*e.g.*, "the claimant is disabled"). 20 C.F.R. § 416.920b(c).  There is no evidence in the record tending to show that either doctor or their opinions fall into any of these categories.  Instead, Dr. Oguntuyo and Dr. Nichols are medical sources who issued medical opinions about Bishop's medically determinable impairments and accompanying physical limitations, so the ALJ should have evaluated the persuasiveness of their medical opinions using five factors: (1) supportability, (2) consistency, (3) relationship with

the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c(c). And because the two most important factors are supportability and consistency, the ALJ should have explained how he considered these two factors for any medical source opinion. 20 C.F.R. § 404.1520c(b)(2) & (c). The ALJ did not discuss these issues with any particularity.

The ALJ's use of the language from 20 C.F.R. § 416.920b(c) calls into question whether he applied the correct standard in reviewing the medical source opinions. Applying the wrong legal standard to the evaluation of medical opinion evidence is an error of law requiring remand. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991). And while the court acknowledges that the ALJ also used some of the language from 20 C.F.R. § 404.1520c(c) for evaluating medical opinions, the erroneous use of the incorrect standard prevents the court from concluding with any certainty which standard he applied. This requires remand. *See Keeton v. Dept. of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("The Secretary's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.").

## V. CONCLUSION

For these reasons, the court concludes that the decision of the Commissioner

11

is due to be reversed and remanded for further proceedings consistent with this memorandum option.  An order remanding the case to the Commissioner will be entered separately.

DONE and ORDERED on May 26, 2026.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE